Charles Wallace SMITH, Appellant,

v.

The STATE of Texas, Appellee.

No. 51498.

Court of Criminal Appeals of Texas.

June 2, 1976.

On Motion for Rehearing Sept. 20, 1976.

Arthur Brender, Fort Worth, for appellant.

Tim Curry, Dist. Atty. and Donald S. Gandy, Asst. Dist. Atty., Fort Worth, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

BROWN, Commissioner.

This is an appeal from a conviction for the offense of aggravated kidnapping under V.T.C.A. Penal Code, Sec. 20.04. The jury assessed punishment at twenty-five (25) years in the Texas Department of Corrections.

The sufficiency of the evidence is not challenged by the appellant's appointed counsel. Only a brief resume of the facts is, therefore, required.

The record reflects that James E. Berry and L. V. Henderson were abducted at gunpoint from a Fort Worth grocery on the morning of September 15, 1974. They were taken by three men, James E. Smith, the brother and co-defendant of the appellant, Dwight Orr, and a third man. Both victims were taken to an apartment in the Riverside Village Apartments complex in Fort Worth. There were numerous visitors to the apartment where the victims were held, and at one point both victims were burned with heated coat hangers by an individual called "Red." The appellant armed with a pistol arrived later at the apartment where the victims were being held and told both of

the victims that he had drawn battery acid into a syringe. The appellant then told both victims that he was going to inject both of them with the battery acid and that this would result in instant death.

The appellant and three other individuals took Berry to a wooded area in southern Tarrant County. There, the appellant and the others attempted to inject Berry with battery acid unsuccessfully; finally, they drew straws and one of the four shot Berry, resulting in his death. Meanwhile Henderson escaped. Berry's body was found on September 18, 1974 in a wooded area near Mansfield in Tarrant County.

In light of the disposition of this case we need not reach the contentions contained in the appellant's first seven grounds of error.

The appellant in his eighth ground of error contends that the State suppressed the fact that Lonnie Williams, one of the four present when Berry was murdered, had entered into a plea bargain with the District Attorney's office, when Williams denied such an agreement during his testimony for the State.

The appellant argues that during the guilt or innocence stage of the trial Lonnie Williams denied during cross-examination that there had been any agreement between himself or his attorney for a recommendation of a lenient sentence from the District Attorney in return for his testimony in this case.

The record reflects that the appellant filed a Motion for Discovery in which he asked that the State disclose "any evidence that the State may have in its possession or may know about, which would be favorable or helpful to the defense."

The record reflects the following during the cross-examination of Lonnie Williams during the guilt or innocence stage of the trial:

"Q And I believe you said that Mr. Joe Johnson here is your attorney, is that correct?

"A Yes, sir.

"Q And you know who this Assistant Criminal District Attorney is sitting here—you have talked to him before, have you not?

"A Yes, sir, on the 20th.

"Q All right, sir. And I believe that in return for your testimony in this case, they made an agreement between you and—your Prosecutor and your attorney, did they not?

"MR. BUCKNER: If we did, Your Honor—

"THE WITNESS: No, sir.

"MR. BUCKNER: —It wouldn't make any bearing on his testimony and it wouldn't be admissible.

"THE WITNESS: They didn't make an agreement with me.

"THE COURT: I'll overrule the objection.

"BY MR. HILL:

"Q Were you told by your lawyer that if you did testify and plead guilty that you would get a certain number of years in the penitentiary?

"A No, sir.

"Q Have you plead guilty?

"A Yes, sir, I pleaded guilty. He told me to plead guilty on the 20th since I was guilty.

"Q Yes, sir.

"A I might as well plead.

"Q I understand that. Did the Judge go ahead and sentence you and tell you how much time you were going to get?

"A No, sir, he told me that he was going to think it over two or three days and he would pass sentence later on me and Fat Albert, both.

"Q And would pass sentence after you testified in the case, is that correct?

"A He didn't say after I testified.

"Q He did not say?

"A He didn't even mention 'testify.' I didn't know that I was suppose to be down there.

"Q Did they tell you you could be sent to the penitentiary for life?

"A Right, sir.

"Q But nobody has promised you anything?

**834**

"A No one promised me anything.

"Q Did they offer you anything?

"A Offer me anything?

"Q Yes, sir.

"A They haven't offered me anything. I wouldn't have taken offering nowhere. I wouldn't have taken no ten years or life—they haven't offered me anything.

"Q Do you expect to be offered anything?

"A I expect just to go serve my time and get it all over with is all I expect.

"Q I understand that—

"MR. BUCKNER: Your Honor, we're going to object again to repetition and also materiality.

"THE COURT: Overruled.

"BY MR. HILL:

"Q Do you expect to get ten years or less?

"A No, sir, I don't even realize that. That is up to the Judge and jury.

"Q You understand that you're not going to have a jury?

"A Well, that doesn't make it any different, just still get it over with.

"Q Did they tell you that you were going to have to testify against the other people in the case?

"A Did they tell me that I have to testify?

"Q Did they tell you you were going to be called to testify?

"A Yes, sir, told me that I had to testify and he wanted me to tell the truth.

"Q But they didn't tell you that you were going to get ten years or less?

"A No, sir.

"Q You just are trusting your lawyer?

"A He has been fair with me so far.

"Q And the State has been fair with you so far, haven't they?

"A I don't know whatever they give me, I have to take it."

At the punishment stage of the trial the appellant called Lonnie Williams' attorney, Joe Johnson, Jr., who testified as follows:

"Q State your name, please.

"A Joe Johnson, Jr.

"Q What's your profession, Mr. Johnson?

"A I'm an attorney.

"Q And zeroing on this case, did you represent one of the defendants in this case?

"A Yes, I represented Lonnie Bob Williams.

"Q Has he pleaded guilty in this case?

"A He has.

"Q And was there any agreement between the State of Texas and the defendant as to what punishment he would receive?

"A *The State indicated to me that if he plead guilty and testified and testified to the truth that they would probably recommend to the Court a ten year sentence.*

"Q Okay, sir. Was there any other—

"A *Well, in order to protect my client, there was a proviso with that. I said that if any defendant received less than ten years, then I wanted them to consider making the same recommendation and that he receive no more than the least sentence that might be got because in my estimation, Lonnie Bob Williams was less culpable than anybody.*

"MR. COOK: I believe that's all.

"MR. HILL: And that—

"THE COURT: You're going to cross examine him?

\*    \*    \*    \*    \*    \*

"BY MR. HILL:

"Q And was that recommunicated to you by these prosecutors sitting right over here?

"A Yes, sir."

(Emphasis Added)

The United States Supreme Court in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1964) held that the suppression by the prosecution of evidence favorable to the accused after a request violates due process where the evidence is material

either to the guilt or punishment irrespective of the good or bad faith of the prosecution.

In *Ridyolph v. State,* 503 S.W.2d 276 (Tex.Cr.App.1973) this Court reversed a conviction on the failure of the prosecution to disclose a police report indicating a witness who apparently could have given testimony favorable to the accused, holding this violated the prosecutor's constitutional duty to disclose evidence favorable to the accused. The Court relied on *Moore v. Illinois,* 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972) which set out the factors to be considered when the prosecution is alleged to have suppressed evidence. First, there must be suppression by the prosecution after a request by the defense. Second, the evidence's favorable character for the defense must be shown. Third, the evidence must be material to the case.

In *Burkhalter v. State,* 493 S.W.2d 214 (Tex.Cr.App.1973) this Court held that the State may not knowingly use false testimony and that the rule does not cease to apply merely because the false testimony goes only to the credibility of the witness. *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). As recognized in *Napue v. Illinois,* supra, the jury's estimate of the truthfulness and reliability of a witness may well be determinative of guilt or innocence.

As stated in 1 C. McCormick & R. Ray, Texas Evidence, Sec. 673 (2d ed. 1956):

"Where an accomplice in the crime with which the accused is charged testifies for the prosecution this is a circumstance affecting his credibility. It indicates a probability that he is seeking or has been promised favor at the hands of the State."

Recently in *Trippell v. State,* 535 S.W.2d 178 (Tex.Cr.App.1976) we held that it was reversible error to deny the accused the right to cross-examine a witness about a prior conviction that could have reflected on his bias, prejudice, and ulterior motive. In *Trippell v. State,* supra, we cited *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1975) wherein the Supreme Court stated:

"The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.' 3A J. Wigmore, Evidence, § 940, p. 775 (Chadbourn rev. 1970)."

Clearly, the prosecutor erred in failing to correct the erroneous impression made by Lonnie Williams in his testimony at the guilt or innocence stage of the trial. As in *Buckhalter v. State,* supra, it is not a question of knowing perjury on the part of Williams, since he may not have been aware of the agreement made by his counsel, but the knowledge will be imputed to him because of the false impression made before the jury. The defense should have been able to place the parties and the witness in their proper perspective and to develop further the interests involved. The prosecutor may not be a party to a knowing misrepresentation of the relationship of the witness to the facts of the case. *Alcorta v. Texas,* 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957). See also DR 7–102(a)(4) and EC 7–13, Symposium—Legal Ethics, 23 Baylor L.R. (1972).

We simply hold that the knowing suppression of the plea bargain between the prosecution and the witness Lonnie Williams from the jury during the guilt or innocence phase of the trial is a denial of due process and requires the reversal of the conviction. We are not unmindful of the time and expense involved in the preparation of this case. Our intent is not to punish the prosecutor or the trial court for the error discussed, but rather to avoid an unfair trial. Society wins not only when the guilty are convicted but also when the criminal trial is fair; our system of justice suffers when any accused, no matter what the evidence, is treated unfairly. *Brady v. Maryland,* supra.

The judgment is reversed and the cause remanded.

Opinion approved by the Court.

## OPINION ON STATE'S MOTION FOR REHEARING

DOUGLAS, Judge.

In the opinion on original submission the judgment was reversed on the ground that the State did not inform appellant that it had agreed with an attorney for an accomplice witness to plead guilty for a recommendation of a light punishment. We agree with the State's contention that there was no showing and no claim that counsel for appellant did not know of this agreement. The prior dissenting opinion is withdrawn. We affirm.

The appeal is from a conviction for the offense of aggravated kidnapping under V.T.C.A., Penal Code, Section 20.04. Punishment was assessed by the jury at twenty-five years.

The indictment alleged that on the fifteenth of September, 1974, appellant

". . . did then and there knowingly and intentionally abduct James E. Berry by secreting and holding him in a place where he was not likely to be found and by using and threatening to use deadly force on the said James E. Berry, and with the intent to terrorize and inflict bodily injury on the said James E. Berry and to facilitate the commission of a felony, to-wit: murder of the said James E. Berry, by shooting him with a gun."

At approximately 10:00 o'clock on a Sunday morning, September 15, 1974, James E. Berry and L. V. Henderson were abducted at shotgun point from a grocery store in Fort Worth. They were taken by James E. Smith, a brother and co-defendant of appellant Charles Wallace Smith, Dwight Orr and a third man to an apartment in Riverside Village apartment complex in Fort Worth. After Berry and Henderson were bound, they were burned with a coat hanger by Elwin Joseph "Red" Oubre. Later, Charles Wallace Smith, appellant, arrived at the house armed with a pistol. He told Berry and Henderson that he had drawn battery acid into a syringe and that he was going to inject it into both of them and that it would cause instant death. He told the

group that they ought to get it over with. He, James Smith, Albert Harrison, known as Fat Albert, and Lonnie Bob Williams took Berry to James Smith's car. L. V. Henderson escaped. Someone fired at him but he was not hit. Williams, Harrison and the Smith brothers then drove Berry to a secluded area near Mansfield. Berry was taken from the car into a wooded area some distance from the road. Either appellant or Harrison then drew the acid from a battery and Harrison and James Smith both attempted unsuccessfully to inject the acid into Berry. All four of them attempted to choke Berry. Finally, the four drew straws to decide which would "rub out" Berry. He was shot and killed.

The State's case was made mainly from the testimony of L. V. Henderson who escaped and Lonnie Bob Williams, the accomplice witness who had already entered a plea of guilty to the offense. L. V. Henderson had been convicted for armed robbery and burglary. He testified that the two groups had been feuding over the sale of some marihuana and a robbery.

We will first discuss the ground of error under which this cause was originally reversed. It is, in substance, that the court erred in failing to grant a new trial after evidence was introduced at the punishment stage of the trial that the district attorney had made an agreement with the accomplice witness Lonnie Bob Williams to recommend a ten-year or less sentence in return for his testimony and that the district attorney failed to disclose this.

Appellant does not contend nor does he claim that he did not know that an agreement had been made. In fact, the evidence shows that no agreement had been made with the witness Williams and the State. The only agreement shown was that the prosecutor had told Joe Johnson, Jr., the attorney for Williams, that he would recommend ten years or perhaps less. The evidence shows that the witness did not know of the agreement.

Apparently appellant's counsel at the trial knew of the arrangement between the counsel for Williams and the State at the

guilt stage of the trial. On cross-examination, the defense attorney asked:

"Q. All right, sir. And I believe that in return for your testimony in this case, they made an agreement between you and—your prosecutor and your attorney, did they not?"

Then, further questions were asked as follows:

"Q. Do you expect to get ten years or less?"

and

"Q. But they didn't tell you that you were going to get ten years or less?"

These questions along with the testimony of the attorney Joe Johnson, Jr., who was called by the defense at the punishment stage of the trial, were predicated upon knowledge of what the agreement was between the prosecutor and the attorney representing the witness. The record does not show as required by our previous decisions that appellant had no knowledge of what he claims to have been suppressed but indicates to the contrary that he did, in fact, have such knowledge.

The ground of error alleges that the court failed to grant a new trial because of the suppression of the evidence. No motion for new trial on this ground was made. There was no motion for a mistrial after testimony was introduced at the penalty stage of the trial. Appellant was apparently satisfied at that time. If the court had granted a mistrial on its own motion, jeopardy would have attached.

In *Chappell v. State,* 489 S.W.2d 923 (Tex. Cr.App.1973), this Court held that one could not complain of suppression of evidence by the prosecution if the facts were already within his knowledge.

In *Means v. State,* 429 S.W.2d 490 (Tex. Cr.App.1968), this Court required that before one could obtain reversal on grounds of suppression of evidence he would have to make some showing at the trial that he did not know the evidence allegedly suppressed. In *Means,* this Court wrote:

"If appellant's counsel, of course, actually knew the facts which were withheld, appellant cannot now seek relief on the basis of the State's failure to disclose the same facts. See *Thomas v. United States,* 343 F.2d 49 at pp. 54–55, 9th Cir., 1965; *United States ex rel. Thompson v. Dye,* 221 F.2d 763 at p. 767, 3rd Cir., Cert. denied, 350 U.S. 875, 76 S.Ct. 120, 100 L.Ed. 773. Therefore, even if we were to conclude that the actions of the State's attorney constituted suppression of the evidence, which may have had an effect on the outcome of the trial, still reversible error is not shown in view of the fact that appellant has failed to show that he did not know the results of the test involved before the receipt of the jury verdict at this one stage trial."

*Burkhalter v. State,* 493 S.W.2d 214 (Tex. Cr.App.1973), relied upon by appellant is not in point because that was not a claimed suppression of evidence case. Burkhalter and his counsel knew that an attorney not connected with the case offered to get Whitehurst immunity if he would testify for the State. This Court reversed that conviction because the trial court refused to let Burkhalter prove the offer. In the present case, appellant did not ask if there was an agreement between counsel for Williams and the State. Appellant did not then, and does not now, claim that he had no knowledge of the agreement between the attorneys. Under *Means v. State,* supra, one has to show that he did not know of such agreement to claim suppression of evidence. If one knows of such an agreement, he should offer proof of it and, if excluded, then he could claim reversible error under the *Burkhalter* case.

Appellant relies upon *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). That case is not in point because it involved a discovery, after trial, of information known to the prosecution but unknown to the defense.

*Mooney v. Holohan,* 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935), also relied upon is not applicable because the undisclosed evidence demonstrated that the prosecution's case included perjured testimony and that

the prosecution knew, or should have known, of the perjury. No perjury was involved in the present case.

Recently, the Supreme Court of the United States in *United States v. Agurs,* —— U.S. ——, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), held that the failure of the prosecutor to furnish the criminal record of the deceased (which showed convictions for assaults) in a murder trial where the issue of self-defense had been raised was not reversible error. There, as in the present case, was no request for the information. The court wrote: "If the suppression of evidence results in constitutional error, it is because of the character of the evidence, not the character of the prosecutor." The Supreme Court did not favor reversal for "automatic error." Mr. Justice Stevens, in the *Agurs* case, wrote a well-reasoned opinion concerning the standards for the prosecution in disclosing matters favorable to the defense.

To hold that one has knowledge of such an agreement and later claim that he was not told by the prosecutor of the agreement would be to allow one to take a free ride during the trial and if he is not satisfied with the result he can always get a new trial.

We hold, as we did in *Means* and in subsequent cases, that because appellant failed to show that he had no prior knowledge of a plea bargain between the attorney for Williams and the State no reversible error is shown. See *Haywood v. State,* 507 S.W.2d 756 (Tex.Cr.App.1974), and *Simmons v. State,* 504 S.W.2d 465 (Tex.Cr.App. 1974).

Even though no motion to quash was filed, appellant contends that the indictment is fundamentally defective because it does not allege an element of the offense essential to the determination of punishment. V.T.C.A., Penal Code, Section 20.04, provides that the crime of aggravated kidnapping is a first degree felony unless the kidnapper voluntarily releases his victim alive and in a safe place. Appellant urges that the indictment does not allege that he failed to release his victim alive and in a safe place and, therefore, he did not know if he had been charged for a first or a second degree felony.

The releasing of a victim alive and in a safe place is not an element of aggravated kidnapping. That part of the code providing for a reduction of punishment if a victim is released alive and in a safe place does not provide that such is an "exception" as set out in V.T.C.A., Penal Code, Section 2.02, which provides:

"(a) An exception to an offense in this code is so labeled by the phrase: 'It is an exception to the application of . . . .'

"(b) The prosecuting attorney must negate the existence of an exception in the accusation charging commission of the offense and prove beyond a reasonable doubt that the defendant or defendant's conduct does not fall within the exception."

The State is not bound to negate the existence of such a fact. The proof of such a release would be in mitigation of punishment and not an exception under Section 2.02, supra. We hold that the indictment is sufficient to charge the offense of aggravated kidnapping.

Appellant contends that the court committed reversible error in its charge to the jury by allowing him to be convicted of an offense not alleged in the indictment when it instructed the jury that a person

" . . . commits the offense of Aggravated Kidnapping if he intentionally or knowingly abducts another person with the intent to:

"(1) hold him for ransom or reward;

"(2) use him as a shield or hostage;

"(3) facilitate the commission of a felony or the flight after the attempt or commission of a felony;

"(4) inflict bodily injury on him or violate or abuse him sexually;

"(5) terrorize him or a third person; or

"(6) interfere with the performance of any governmental or political function . . . ."

Following this definition and after an instruction on the law of parties (which was

known before the present code as principals), the court instructed the jury as follows:

"Now, if you find from the evidence beyond a reasonable doubt that James E. Smith, or Albert Harrison (Fat Albert), or Lonnie Bob Williams, or Caesar McKnight (Cecil), or Elwin Joseph Oubre (Red), or Dwight Orr (Dee Dee), in Tarrant County, Texas, on or about the the [sic] 15th day of September, 1974, did intentionally commit the offense of Aggravated Kidnapping *as hereinbefore defined,* and that the defendant, Charles Wallace Smith, knew of the intent. . . ." (Emphasis Supplied)

He urges that this charge allowed the jury to find appellant guilty of aggravated kidnapping as "hereinbefore defined" and led the jury to believe that they were to follow the definition of aggravated kidnapping in paragraph I of the charge. The definition tracked the aggravated kidnapping statute and included several types of kidnapping not alleged in the indictment. The indictment alleged that appellant kidnapped the victim with the intent only to terrorize, inflict bodily injury on him, and to facilitate the commission of a felony.

Immediately after the complained of paragraph, the court submitted the following:

"Now, bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that the defendant, Charles Wallace Smith, either acting alone or with others, on or about the 15th day of September, 1974, in the County of Tarrant, and State of Texas, as alleged in the indictment, did then and there intentionally or knowingly abduct James E. Berry by secreting or hold [sic] him in a place where he was not likely to be found or by using or threatening to use deadly force on James E. Berry and *with the intent to terrorize or inflict bodily injury on the said James E. Berry or to facilitate the commission of a felony, to wit: murder of the said James E. Berry by shooting him with a gun,* you will find the defendant guilty of the offense of Aggravated Kidnapping and so say by your verdict. . . ." (Emphasis Supplied)

This paragraph in applying the law to the facts has the jury to believe beyond a reasonable doubt that appellant used or threatened to use deadly force with the intent to terrorize or inflict bodily injury or facilitate the commission of a felony as charged in the indictment. It is unlikely that the jury could have been confused by the general definition of aggravated kidnapping in paragraph I since no evidence was presented concerning the other possible types of kidnapping. This Court should consider the charge as a whole. *Bailey v. State,* 532 S.W.2d 316 (Tex.Cr.App.1975). We hold that the charge considered in its entirety does not present reversible error. See *Williams v. State,* 535 S.W.2d 352 (Tex. Cr.App.1976). Appellant was apparently satisfied with the charge because he did not object to it.

Appellant also complains for the first time on appeal of the same definition of aggravated kidnapping set out in paragraph I of the charge and of the paragraph which applied the law of parties. For the reasons set out above in the previous contention about the charge, no reversible error is shown.

Complaint is made that the trial judge erred in not granting his motion to quash the jury panel following the judge's remarks during voir dire when he commented as follows:

"THE COURT: Now, I'll instruct you at the outset that the fact that these defendants have been indicted by the Grand Jury is no evidence of their guilt. An indictment is no evidence. It's just a pleading and it's a method or manner of bringing the case to Court for trial.

\* \* \* \* \* \*

Is there anybody on the panel who would feel like the Grand Jury indictment would be some evidence of their guilt? In other words, do you think they must be a little bit guilty or they

wouldn't have been indicted? Anybody feel that way?

(Jurors raise hands)

"THE COURT: Well, let me explain something, first. The Grand Jury doesn't hear the case like a Petit Jury does. The Grand Jury ordinarily just hears one side of the case, just the State's case and they don't hear any Defense as a general rule. They don't even hear the defendants tell their part of what happened. They just review the evidence and decide whether or not there is enough evidence to have a trial. They don't make a decision on the question of guilt or innocence."

The appellant objected to this explanation of the trial court as a comment on the failure of the defendant to testify.

▉▉▉ In order for a remark to be reversible error as a comment on the failure of a defendant to testify, it must necessarily refer to the failure of a defendant to testify. There was no indication at this stage of the trial whether or not appellant would testify. The judge's statement could not be taken as a comment on the subsequent failure of the defendant to testify. *Myers v. State,* 527 S.W.2d 307 (Tex.Cr.App. 1975).

▉▉▉ Complaint is made of the following remark made by the prosecutor during the punishment stage of the trial:

"PROSECUTOR: Let me ask you this: Mr. Hill [co-defendant's counsel] didn't seem to think much of my character witnesses. Just general reputation, and so all they can bring is four Foot Patrols that work down there four years, walking those streets from Sugar Hill to the end—all the way up and down Evans Street, walking them up and down talking to everybody they knew.

And then the defendants get up and say, 'Yeah, well, they were the ones that we happen to get on the assult [sic] on a police officer with.' They have known them for two or three years. They know their reputation down there.

And he says that is kind of sorry evidence. But, let me tell you one more thing, if I was to try to tell you what they had done down there earn their reputation, they would be jumping up objecting just as fast as if I'd try to tell you anything else that's not in evidence and a part of this case admitted. I'm not allowed to go into specific acts of these defendants. I can't tell you anything they did down there."

Appellant urges that this argument permitted the jury to speculate on undisclosed prior conduct of appellant. The record reflects that during the punishment phase appellant's counsel argued as follows:

"Let's look at that, ladies and gentlemen. You saw the police who came up here and said these folks had a bad reputation—well, they said everybody out there had a bad reputation. And I can assure you that any defendant on trial here, they're going to get three or four police to come in here and say they've got a bad reputation. That's the way—that is their trial tactics, if you please. He talks about trial tactics. That's the State's trial tactics.";

which was later followed by the statement:

"And you and I can talk about someone's general reputation out in the hall and then I'm qualified to take the witness stand under oath and say that I have heard your general reputation for being peaceable and law-abiding is bad."

It is clear that the prosecutor's comments were in response to defense counsel's remarks and as such were proper. *Alejandro v. State,* 493 S.W.2d 230 (Tex.Cr.App.1973). No error is shown.

Next, appellant complains of argument made by the prosecution during the punishment stage of the trial. This argument was made after evidence had been introduced that the accomplice witness, Lonnie Bob Williams, had pled guilty upon recommendation by the prosecution for a light punishment. Williams' attorney, Joe Johnson, Jr., a defense witness, testified about the agreement.

The prosecutor stated:

"Defendants called Mr. Johnson as their witness and I think that you can reasonably conclude that they are trying to set some sort of standard for what their clients ought to get by what this man got—Lonnie Bob Williams, got. And you notice that I went into the Defense—with the Defense under the Court's Ruling. There are a lot of negotiations and a lot of things that I know about Lonnie Bob Williams that helped me make up my mind as to what I'm going to recommend in his case and obviously, that I think you can conclude that I think he's different from these two in some respects. Such as his four years in Viet Nam rather than walking Evans Street. And obviously, he was less culpable of the four.

"MR. HILL: We object to that.

"MR. COOK: (Counsel for appellant) We object to that.

"THE COURT: Why?

"MR. HILL: For the reason that it's outside the Record and there's no testimony relative to his culpability.

"THE COURT: I believe it's in the Record. I'll overrule the objection.

"MR. COOK: He was the principal in the case like—

"THE COURT: Don't make any jury speeches and I will overrule the objection."

Earlier in the trial Williams' attorney, Johnson, testified that Williams had served four years in Vietnam and was considered by the State to be the least culpable of the four defendants. There was no objection to the testimony until the witness was taken on voir dire. The trial court then sustained an objection to the testimony concerning the witness' service in Vietnam as hearsay. Appellant did not ask for any instruction to the jury to disregard the testimony concerning the witness' military record and culpability.

The gist of appellant's ground of error on appeal is that the prosecutor's argument was used to bolster the witness' testimony. No such objection was raised during the trial. Nothing is presented for review.

*Arivette v. State*, 513 S.W.2d 857 (Tex.Cr. App.1974).

Appellant complains of the following argument made by the prosecutor at the guilt stage of the trial:

"PROSECUTOR: Now, Mr. Hill finished up by saying that I would tell you that you've got a duty to convict these people. I tell you that you've got a duty to this community to see that justice is done. And justice is guilty people get found guilty."

No objection was made by appellant to this argument. Nothing is presented for review.

The State's motion for rehearing is granted. The judgment is affirmed.