



## MEMORANDUM OPINION

No. 04-08-00594-CR

James Leon **RYAN**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 7, Bexar County, Texas
Trial Court No. 224646
Honorable Monica Guerrero, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:    Rebecca Simmons, Justice
            Steven C. Hilbig, Justice
            Marialyn Barnard, Justice

Delivered and Filed:    July 15, 2009

REVERSED AND REMANDED

This case stems from an assault causing bodily injury. After Appellant James Leon Ryan was found guilty by a jury, the trial court sentenced Ryan to one year confinement in the Bexar County Jail suspended and probated for a term of two years. On appeal, Ryan asserts (1) the trial court improperly denied his right to cross-examine the complainant regarding her motive to lie, (2) the evidence is both legally and factually insufficient to support his conviction, and (3) the trial court erred in failing to grant his motion for new trial based on jury misconduct. We reverse

the judgment of the trial court and remand this matter for further proceedings consistent with this opinion.

## BACKGROUND

Appellant Ryan and his common-law wife, Tammy Martinez, were at their residence when Martinez saw an incriminating text message and accused Ryan of infidelity. When Ryan started to become agitated, Martinez left the bedroom and went to their son's room. Ryan came into the room, angry and cursing, and proceeded to hit Martinez in the back of the head with a new package of disposable diapers. When Ryan continued to argue and threatened to hit Martinez with a red toy wagon, Martinez instinctively "went over my son so he wouldn't get hit." Martinez eventually left the son's bedroom and Ryan followed her into their bedroom calling her names. Ryan then pushed Martinez against the wall, pinning her wrists. After Ryan released Martinez, he hit her with a pillow. Martinez grabbed her phone, locked herself in the bathroom, and called the police. After the incident, Martinez moved out of the residence with their two children. According to Martinez, she received an injury to her head and she suffered pain as a result of Ryan's attack. Ryan was charged with assault causing bodily injury.

Trial was before a jury and occurred over a two-day period. Deliberations began in the afternoon, and after two-and-a-half hours the jury informed the court that it was deadlocked. An *Allen* charge[1] was presented to the jury whereupon further deliberation occurred resulting in the return of a guilty verdict.

## LEGAL SUFFICIENCY

We first address Ryan's argument that the evidence is legally insufficient to support the conviction.

---

[1] An *Allen* charge is an instruction given to a deadlocked jury to continue deliberating. *See Allen v. United States*, 164 U.S. 492, 501 (1896).

## A. Standard of Review

When reviewing the legal sufficiency of the evidence, an appellate court examines "the evidence in the light most favorable to the prosecution" and determines whether "*any* rational trier of fact could have found [the appellant guilty] beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *accord Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

## B. Assault Causing Bodily Injury

Ryan was charged and convicted under section 22.01(a)(1) of the penal code which provides a person commits the offense of assault if he "intentionally, knowingly, or recklessly causes bodily injury to another." *See* TEX. PENAL CODE ANN. § 22.01(a)(1) (Vernon Supp. 2008). "'Bodily injury' means physical pain, illness, or any impairment of physical condition" and is proven by evidence that the victim suffered "some" pain. *Id*. § 1.07(a)(8); *see Lane v. State*, 763 S.W.2d 785, 786-87 (Tex. Crim. App. 1989). The jury may infer that the victim felt or suffered physical pain based on one's common intelligence to understand pain and the natural causes of it, as well as on the evidence of injuries or the circumstances of the assault. *See Wawrykow v. State*, 866 S.W.2d 96, 99 (Tex. App.—Beaumont 1993, no pet.); *Goodin v. State*, 750 S.W.2d 857, 859 (Tex. App.—Corpus Christi 1988, pet. ref'd).

## C. Analysis

At trial, Martinez testified that Ryan caused her bodily injury by throwing the disposable diapers at her. Additionally, with regard to the injury to her head, Martinez testified that although she only felt a small bump, San Antonio Police Officer Kohleppel told her she had a cut on her head.

Officer Rachel Kohleppel testified that when she arrived at the scene Martinez was visibly shaken, and Ryan was agitated and uncooperative. On cross-examination, Ryan's counsel spent a considerable amount of time on the difference between the information contained within Officer Kohleppel's report and Martinez's testimony at trial. Specifically, the report did not include information regarding either Ryan pinning Martinez's wrists against the wall or Martinez's need to protect her son from Ryan's threats of injury from the red wagon. The implication was that Officer Kohleppel's report was accurate and Martinez was fabricating additional facts to support the assault. However, Officer Kohleppel's report and testimony describe the diaper throwing incident. Officer Kohleppel was subjected to cross-examination as to whether Martinez was hit with a bag or a box of diapers. The officer acknowledged that, although she remembered seeing diapers strewn about the floor, she did not look for or inquire regarding the packaging of the diapers. Throughout her testimony, Officer Kohleppel maintained her belief that an assault occurred based on Martinez's statement and her demeanor.

Martinez's credibility was an issue for the jury to decide.[2] As for Ryan's assertion that the evidence, including Officer Kohleppel's report, failed to support Martinez's story, the jury heard the testimony and cross-examination and drew its own conclusions on the extent of Martinez's injuries and whether they supported her testimony. *See Pilkinton v. State*, Nos. 05-04-00686-CR & 05-04-00702-CR, 2005 WL 852005, *3-4 (Tex. App.—Dallas Apr. 14, 2005, pet. ref'd). Moreover, the jury was entitled to draw appropriate inferences from the evidence, and the inference that the diapers thrown by Ryan caused pain and thus bodily injury to Martinez was reasonable. *See Wawrykow*, 866 S.W.2d at 100 (deciding that, in the absence of testimony in that regard, a rational fact-finder could have inferred that blows from fists caused physical

---

[2] We note that had the trial court allowed the defense's cross-examination regarding custody of the children, the jury may have weighed Martinez's credibility differently.

pain). Based on Martinez's testimony alone, a rational juror could have found each of the essential elements of assault beyond a reasonable doubt. *See also Lewis v. State*, 530 S.W.2d 117, 118 (Tex. Crim. App. 1975) (noting that the evidence sufficiently proved bodily injury where the complainant testified she suffered physical pain when the defendant grabbed her briefcase and twisted her arm back, causing a small bruise). Accordingly, the evidence is legally sufficient to show that Ryan intentionally, knowingly, or recklessly injured Martinez and caused her pain. *See* TEX. PENAL CODE ANN. §§ 1.07(a)(8), 22.01(a)(1) (Vernon Supp. 2008).

## LIMITED CROSS-EXAMINATION

Ryan next argues that the trial court improperly limited his cross-examination of Martinez. During Ryan's cross-examination of Martinez, defense counsel questioned Martinez regarding the custody of their oldest son. According to Ryan, Martinez was fabricating the attack in order to obtain custody of the children.[3] The trial court sustained at least three relevancy objections lodged by the State.

| | |
|---|---|
| Defense: | [W]hen y'all got separated . . . who got custody of [your son]? |
| Martinez: | [Ryan] had the custody of my oldest. |
| Defense: | And that—so when he got custody, did you guys get separated and how long were you separated? |
| Martinez: | Maybe like three months. |
| | . . . . |
| Defense: | [A]fter that day when [Ryan] got arrested, what happened with the kids? |
| Martinez: | The next day me and my kids moved out. |
| Defense: | You and both kids. Now, he already had custody of one child, right? |
| Martinez: | Uh-huh. |
| Defense: | Did you return the child when he got out of jail? |
| Martinez: | No. |
| Defense: | Why didn't you? |
| Martinez: | Because the orders were done behind my back. |
| State: | Judge, I'm going to object to relevance. |

---

[3] During the defense's opening statement, defense counsel pointed out that under a previous court order, Ryan was awarded custody of one of the couple's children and Martinez was required to pay child support. At the time of the trial, a custody proceeding regarding both of the couple's children was pending.

Court:      Sustained.  Move [on to] another line of questioning, please.

Defense:    Did you—after that, ma'am, did you shortly file anything in court indicating that you wanted to keep both kids?

State:      I'm going to object to relevance.

Court:      Sustained.

Defense:    Your Honor, this has a lot to do with motive behind her making this report.

Court:      Okay.  Move [on to] another line of questioning.

Defense:    Ma'am, at a certain point—at a certain point, did [Ryan] have to go back to try to get the kids from you?

State:      Objection, relevance.

Court:      Sustained.

Ryan asserts the trial court improperly limited his cross-examination with regard to Martinez's motive to lie based on the parties' custody fight.

## A.  Standard of Review

We review the trial court's decision to limit a defendant's cross-examination for abuse of discretion.  *See Carroll v. State*, 916 S.W.2d 494, 498 (Tex. Crim. App. 1996); *Love v. State*, 861 S.W.2d 899, 903 (Tex. Crim. App. 1993); *Crenshaw v. State*, 125 S.W.3d 651, 654-55 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

## B.  Cross-Examination of Martinez

The Sixth Amendment guarantees an accused in a criminal prosecution the right to confront the witnesses against him.  U.S. CONST. amend. VI; *Davis v. Alaska*, 415 U.S. 308, 315 (1974); *Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000).  Cross-examination provides the defendant an opportunity to test "the believability of a witness and the truth of his [or her] testimony."  *Davis*, 415 U.S. at 316.  In some cases, the cross-examination may expose a witness's motivation to testify against the defendant.  *Hurd v. State*, 725 S.W.2d 249, 252 (Tex. Crim. App. 1987), *accord Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).  Texas courts generally provide great latitude in cross-examination to show any fact revealing "possible biases,

prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case [on trial]." *Hammer v. State*, PD-0786-08, 2009 WL 928561, at *4 (Tex. Crim. App. Apr. 8, 2009) (quoting *Davis*, 415 U.S. at 316) (distinguishing between a general attack on a witness's credibility and a more particularized attack against the witness's "bias, motive, or interest to testify in a particular fashion"); *Hurd*, 725 S.W.2d at 252;. Although some limitations may be placed on cross-examination into the bias of a witness, the trial court violates a defendant's right of confrontation when it limits appropriate cross-examination. *Carroll*, 916 S.W.2d at 497.

Cross-examination provides the jury an opportunity to understand the "whole picture" of a witness's motive or bias for testifying, and observe her testimony in light of such background. *See Harris v. State*, 642 S.W.2d 471, 479 (Tex. Crim. App. 1982). A defendant may cross-examine a witness, most importantly a prosecution witness, on any subject "reasonably calculated to expose a motive, bias or interest for the witness to testify." *Carroll*, 916 S.W.2d at 497. This right is further encompassed within the Texas Rules of Evidence. Rule 613(b) allows an opponent to impeach a witness by proof of bias or interest by first questioning the witness and, if the witness denies the bias or motive, "the opponent may introduce extrinsic evidence to prove the motive or bias." *Hammer*, 2009 WL 928561, at *5 (citing TEX. R. EVID. 613(b)). As the Court of Criminal Appeals opined in *Hammer v. State*, "generally speaking, the Texas Rules of Evidence permit the defendant to cross-examine a witness for his purported bias, interest, and motive without undue limitation or arbitrary prohibition." *Id.*

We are mindful, however, of the trial court's broad discretion to impose reasonable limits on cross-examination to avoid harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence. *Carroll*, 916 S.W.2d at 498

(citing *Van Arsdall*, 475 U.S. at 679). The court's restriction on cross-examination "does not violate the defendant's 'right to confront a witness as long as (1) the possible bias and motive of the State's witness is clear to the trier of fact and (2) the accused has otherwise been afforded an opportunity for a thorough and effective cross-examination.'" *Ho v. State*, 171 S.W.3d 295, 304 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (quoting *Stults v. State*, 23 S.W.3d 198, 204 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd)).

### C. Application

In the present case, the record shows that defense counsel asked several questions regarding the children's custody prior to the State's objection on relevance grounds. Martinez acknowledged that when she and Ryan previously separated, the court awarded custody of their older son to Ryan. Defense counsel also established that after Ryan's arrest, Martinez took both children, moved out of the residence, and did not return the elder child to Ryan. However, defense counsel was precluded from questioning Martinez about any subsequent custody dispute between the parties and the effect of the dispute on Martinez's testimony. Notably, the trial court sustained the State's objection to the testimony based on relevance, rather than harassment, prejudice, confusion of issues, or cumulative evidence.

The State argues that the trial court correctly limited cross-examination because the accusation of assault occurred before any subsequent custody battle. Thus, the "details of the custody battle are [not] relevant to accusations made prior to its existence." We do not find this argument persuasive. A conviction of assault bodily injury has statutory consequences in a custody proceeding involving the perpetrator's children.[4] The court is required to consider the

---

[4] *See* TEX. FAM. CODE ANN. § 153.004(a) (Vernon 2008) ("In determining whether to appoint a party as a sole or joint managing conservator, the court ***shall*** consider evidence of the intentional use of abusive physical force by a party against the party's spouse, a parent of the child, or any person younger than 18 years of age committed within a two-year period preceding the filing of the suit or during the pendency of the suit." (emphasis added)).

commission of family violence in determining custody of the children. *See* TEX. FAM. CODE ANN. § 153.004(c) (Vernon 2008) ("The court shall consider the commission of family violence in determining whether to deny, restrict, or limit the possession of a child by a parent who is appointed as a possessory conservator."). Questions regarding custody proceedings would be relevant to Martinez's motivation to exaggerate her testimony at trial. *See Harris*, 642 S.W.2d at 479-80 (concluding that the trial court's refusal to allow effective cross-examination of a State's witness to establish her bias or motive in testifying against the defendant violated the defendant's right to confrontation).

We cannot say that the possible bias and motive of Martinez as a result of an ongoing custody dispute was clear to the jury or that counsel was afforded an opportunity for a thorough and effective cross-examination of Martinez. Therefore, based on the trial court's refusal to allow defense counsel "'to place the parties and the witness in their proper [perspective] and to develop further the interests involved,'" the trial court erred in limiting defense counsel's cross-examination. *See Harris*, 642 S.W.2d at 480 (quoting *Smith v. State*, 541 S.W.2d 831, 835 (Tex. Crim. App. 1976)).

### D. Harm Analysis

Because the erroneous denial of Ryan's right to cross-examination violated the Confrontation Clause, we must conduct a harmless error analysis under Rule 44.2(a). *See* TEX. R. APP. P. 44.2(a); *Rubio v. State*, 241 S.W.3d 1, 3 (Tex. Crim. App. 2007). Under such an analysis, an appellate court must reverse the conviction absent a determination beyond a reasonable doubt that the error complained of did not contribute to the verdict. TEX. R. APP. P. 44.2(a); *Rubio*, 241 S.W.3d at 3. "[A]ssuming that the damaging potential of the cross-examination [was] fully realized," we review the record in light of the following factors:

(1) the importance of the witness' testimony in the prosecution's case,

(2) whether the testimony was cumulative,

(3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points,

(4) the extent of cross-examination otherwise permitted, and, of course,

(5) the overall strength of the prosecution's case.

*Van Arsdall*, 475 U.S. at 684 (numbers added); *accord Davis v. State*, 203 S.W.3d 845, 852 (Tex. Crim. App. 2006).

This case is based on the testimony of Martinez and the officer to whom Martinez related the events. Precluding Ryan from showing the bias and motive of the only percipient witness linking him to the offense hampered his defense. This is especially true in light of the State's closing argument:

> Now the defense made some promises too. One of the promises I wrote down when he was talking, he promised that he would show that this had not happened and that there's other reasons for this activity to take place. That did not happen. Through his questioning of the witnesses trying to develop his story, that did not happen. He did not prove that this did not take place. He did not prove that there's some kind of other reason for the accusation.
>
> . . . .
>
> He did not prove any of that. He made promises and he failed to come through.

*See Miller v. State*, 177 S.W.3d 1, 8 (Tex. App.—Houston [1st Dist.] 2004, no pet) (concluding the error was harmful when "appellants were effectively deprived of the ability to test the credibility of the complaining witness through cross-examination"); *Rubio*, 241 S.W.3d at 11 (concluding that the State's witness's statement likely contributed to the jury's conviction and thus the error clearly prejudiced the defendant's case). Furthermore, the excluded cross-examination was not cumulative, there was no other witness to the events to corroborate Martinez's testimony, and defense counsel was not otherwise "afforded an opportunity for a thorough and effective cross-examination." *See Ho*, 171 S.W.3d at 304 (quoting *Stults*, 23 S.W.3d at 204); *see also Van Arsdall*, 475 U.S. at 684; *Davis*, 203 S.W.3d at 852.

Martinez's motive to lie or exaggerate in order to gain sole custody of their children was a critical issue for the defense. Thus, we cannot say, beyond a reasonable doubt, the trial court's error did not contribute to Ryan's conviction.[5] *See* TEX. R. APP. P. 44.2(a).

### CONCLUSION

The testimony of Martinez and Officer Kohleppel is legally sufficient to sustain Ryan's conviction. However, because the trial court improperly limited defense counsel's cross-examination of Martinez, Ryan was unable to effectively question the only witness linking him with the offense regarding her motive to fabricate the charges. Accordingly, we reverse the judgment of the trial court and remand this matter to the trial court for further proceedings consistent with this opinion.

Rebecca Simmons, Justice

DO NOT PUBLISH

---

[5] Because this issue is dispositive of the appeal, we need not address the remaining issues on appeal. *See* TEX. R. APP. P. 47.1 (requiring concise opinions addressing only those issues "necessary to final disposition of the appeal").