TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00258-CR







Morris C. Kennard, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT


NO. 0936455, HONORABLE BOB PERKINS, JUDGE PRESIDING








 Appellant Morris C. Kennard was convicted in a jury trial of the offense of
aggravated sexual assault. Tex. Penal Code Ann. § 22.021 (West 1994). (1) The punishment,
enhanced by proof of two prior felony convictions, was assessed by the jury at imprisonment for
thirty years. In two points of error, appellant urges that: (1) the trial court erred in refusing to
allow cross-examination of a State's witness about a prior felony conviction; and (2) he was
denied effective assistance of trial counsel. We will affirm the judgment.

 Appellant first complains that "[t]he trial court erred in failing to permit defense
counsel to introduce evidence that the complainant's fiancé had previously pleaded guilty to a
felony battery on the complainant in this case while they resided in California." It is necessary
for us to summarize sufficient facts before our discussion of appellant's contention.

 The twenty-year-old complainant went to a club in Austin with a female friend. 
The complainant was introduced to the thirty-two-year-old appellant at the club. After dancing
and drinking together, appellant and the complainant left the club and went to a nearby apartment
to obtain and smoke crack cocaine. The complainant became uncomfortable at the apartment
because several men were there, and one of them asked her if she sold sex for drugs. The couple
left the apartment with some crack, and appellant drove across town to complainant's apartment.

 At the complainant's apartment, the couple smoked cocaine, drank beer, listened
to music, and talked. While they talked, the complainant gave appellant a group of photographs
so that he could see some of her friends and where she had lived in Washington and California. 
The complainant testified that she had forgotten that several of the photographs showed her
scantily clad in lingerie. She further testified that after appellant viewed these photographs, "he
was a whole lot different person." 

 Appellant's amorous advances became forceful in spite of complainant's
protestation. The complainant resisted and struggled, but appellant pushed her down on a bed and
ripped off her clothes. He placed a belt around her arm and tightened it until the blood circulation
to her hand was cut off. Appellant then removed his clothes. When the complainant continued
to struggle, appellant drew the belt around her neck and tightened it until she lost consciousness
for a time. While in fear for her life, the complainant was raped by appellant. Appellant put on
his clothes and left to get some more crack cocaine.

 The complainant immediately locked the door and called police. Police responded
quickly and arrived at the apartment, which they found in disarray, evidence that a struggle had
taken place. The hysterical complainant was taken to a hospital where she was examined and
tested, and a rape kit was prepared. Police and hospital attendants observed bruises and scratches
on complainant's neck, arms, and body. The examining nurse referred to the marks on
complainant's neck as "ligature marks." The complainant's examination revealed spermatozoa
of two different men in her vagina. By expert testimony it was shown that the source of the
spermatozoa could have been the appellant and the complainant's fiancé.

 Testifying in appellant's defense, a friend who was at the club testified that she saw
a bruise on the complainant's arm while the complainant was at the club. A friend of appellant
with whom he came to the club testified that the complainant was disturbed about her personal life
and said that she was "getting into a marriage she didn't want to get into" because she was "tired
of [her fiancé's] abuse." Appellant testified that he had noticed bruises on the complainant's arm,
but he didn't recall seeing any bruises on her neck. Appellant made a written statement to police
after his arrest in which he claimed the sexual intercourse was consensual and an exchange of sex
for crack cocaine. Appellant's trial testimony was the same.

 The complainant and her twenty-three-year-old fiancé, David, moved to Austin
about six months before the offense was committed and about one year before the trial. They had
formerly lived together in Washington and California. Four days before the offense, David went
to California to serve as best man at his brother's wedding. He returned to Austin by plane about
one or two hours after the offense was committed.

 At trial, the State called David to testify. Pursuant to a motion in limine, and for
appellant's bill of exception, David testified in the absence of the jury. David admitted he had
prior convictions: a misdemeanor theft conviction when he was eighteen, and a felony conviction
in California for an assault and battery on the complainant. The latter conviction was the result
of a spat during which David attempted to cut off the complainant's hair and cut her hand with
scissors. This offense occurred three years before David testified in this case. He received a two-year deferred adjudication which he had served and completed. Although appellant's counsel both
at trial and on appeal argued that David entered a plea of guilty to the felony offense, the record
evidence does not support these assertions.

 In his testimony before the jury, both on direct and cross-examination, David
testified that he left Austin four days before and returned one to two hours after the offense was
committed. On direct examination he also testified that when he saw complainant after coming
back to Austin she was "extremely shaken up" and he observed marks around her neck that looked
as if she had tried to hang herself. He saw other scratches and bruises on her body. None of the
marks, bruises, or scratches were on her body before he left Austin. David's testimony was
almost all corroborative of other testimony and added little to the State's case.

 Defense counsel at trial argued that evidence of the assault conviction was
admissible to "show that the witness is prone to violence towards the victim in this case," "for
impeachment purposes," and to "show that there's a possibility that the bruises on her body may
have come through some other source than [appellant]." Also rather inconsistently, counsel
argued that: "I'm not trying to show -- to impeach the testimony to show he is lying, Judge. I'm
trying to show that there is a pattern of history here to where this could have occurred through
the witness and by his actions, and not by my client's actions." The trial court ruled that proof
of the theft conviction would be admitted, but proof of the assault conviction would not, under
the Rules of Criminal Evidence. Tex. R. Crim. Evid. 608(b), 609(C)(2). Rule 608(b) provides:



(b) Specific instances of conduct. Specific instances of the conduct of a witness,
for the purpose of attacking or supporting his credibility, other than conviction of
crime as provided in Rule 609, may not be inquired into on cross-examination of
the witness nor proved by extrinsic evidence.



Rule 609(c) provides:



(c) Effect of pardon, annulment, or certificate of rehabilitation. Evidence of
a conviction is not admissible under this rule if . . . probation has been
satisfactorily completed for the crime for which the person was convicted, and that
person has not been convicted of a subsequent crime which was classified as a
felony or involved moral turpitude, regardless of punishment.



 On appeal, appellant has now changed his grounds for claiming it was error not to
allow him to question David about his California conviction for assaulting the complainant. 
Appellant asserts that he had a constitutional right to cross-examine David for purposes of
demonstrating any bias, ill feelings, motive, or animus. However, neither at trial nor on appeal
has appellant articulated what specific bias, ill feeling, motive, or animus might have influenced
David. Appellant claims he was denied his constitutional right of confrontation. U.S. Const.
amend. VI. He argues that his constitutional right to confront the witness against him requires
that he be permitted to cross-examine a State's witness about a probated conviction even when
State law prohibits such information from being admitted into evidence in any proceeding. 
Appellant cites and relies on Davis v. Alaska, 415 U.S. 308 (1974); Harris v. State, 642 S.W.2d
471 (Tex. Crim. App. 1982); and Paley v. State, 811 S.W.2d 226 (Tex. App.--Houston [1st Dist.]
1991, pet. ref'd).

 We find this argument unpersuasive. These cases cited by appellant are not
controlling since the facts in these cases are distinguishable from the facts in the present case. In
Davis, the accuracy and truthfulness of the witness's testimony were key elements in the State's
case against the defendant. The defense sought to show that the witness's vulnerable status as a
probationer and his concern that he might be a suspect in the investigation biased his testimony. 
Davis, 415 U.S. at 317-18. In the present case, David was no longer on probation in California,
and he could have no rational concern that he might be a suspect in the aggravated sexual assault
of complainant.

 In Harris, the court held it was error to deny questioning a witness about juvenile
proceedings arising out of the same offense for which the defendant was on trial where the
prosecutor had intervened to delay the adjudication of the juvenile cause. Further the court in
Harris held that the defendant had an unqualified right to ask, as he did, the only witness's linking
him with the offense whether she too had been accused of the offense on trial and to receive her
answer. The jury was entitled to understand the whole picture of the witness' vulnerable status
in the juvenile court and to observe her and hear her testimony thereon. That she had not yet been
adjudicated a delinquent child or been ordered transferred to the district court under the pending
cause was itself a relevant circumstance. It was probative not only of her credibility as a witness,
but also of the only substantive issue in the case--whether she was an accomplice witness whose
testimony would require corroboration. Harris, 642 S.W.2d at 479. Obviously the matters
determinative of the court's holding in Harris are not present in the instant case.

 In Paley, the witness was a material eyewitness to the events for which the
defendant was being tried. He was on probation after deferred adjudication proceedings on that
date and at the time of trial. For the purpose of measuring the witness's credibility and the extent
to which the State might have influenced his testimony, the jury was entitled to know about his
deferred adjudication status and any considerations he might have had with the prosecution,
police, or his probation officer about ending his probation. 811 S.W.2d at 229. The
circumstances and David's testimony in this case are far different than those in Paley. 

 In this same point of error, appellant also argues that the trial court erred in failing
to permit the requested cross-examination because in so doing it left the jury with the false
impression that David never physically assaulted the complainant. However, David did not testify
before the jury that he never physically assaulted the complainant, so the jury had no false
impression from David's testimony. Even if David assaulted the complainant three years earlier,
the assault had no relevance to the aggravated sexual assault committed by appellant.

 Appellant makes an additional claim in this same point of error that the ultimate
damage to him occurred when the complainant testified, also free from cross-examination about
this matter, that she had not been physically abused by David. Appellant further argues that the
complainant "was permitted to testify completely free from cross-examination regarding his
[David's] arrest and plea of guilt from having committed the physical assault she now says never
existed." We again point out that there is no record evidence that David pleaded guilty to the
assault in California.

 Appellant directs our attention to the complainant's testimony on cross-examination: 
"Q. Okay, then it's your testimony, [complainant], that you were not physically abused by
[David]; is that correct? A. Right." This cross-examination and testimony followed immediately
after the cross-examination and testimony of the complainant, which violated the trial court's
earlier ruling not to go into these matters.



Q: [by Defense Counsel]. No, go ahead. I'm sorry.


A: He never abused me as in physically hitting me, no.


Q: He's never physically abused you?


A: Not hit me. He cut my hair off when I was 17 years old.


Q: He cut your hair off?


A: Yes.


Q: Was he charged with any criminal offense?


A: Yes, he was.


Q: What was the criminal offense?



The jury heard this testimony even though the court admonished the jury to disregard it.

 Moreover, when a party on cross-examination elicits an answer on a collateral
matter such as this, the witness may not be contradicted. Ramirez v. State, 802 S.W.2d 674, 675-76 (Tex. Crim. App. 1990); Flanery v. State, 676 S.W.2d 369, 370 (Tex. Crim. App. 1984);
Shipman v. State, 604 S.W.2d 182, 183-85 (Tex. Crim. App. 1980); Celeste v. State, 805 S.W.2d
579 (Tex. App.--Tyler 1991, no pet.); Renteria v. State, 703 S.W.2d 329, 333 (Tex. App.--Corpus
Christi 1985, no pet.); see also Gutierrez v. State, 764 S.W.2d 796 (Tex. Crim. App. 1989);
Martinez v. State, 728 S.W.2d 360, 362 (Tex. Crim. App. 1987) (Clinton, J., dissenting); Bates
v. State, 587 S.W.2d 121, 140-43 (Tex. Crim. App. 1979).

 The trial court's ruling to disallow David's cross-examination about the California
conviction was correct. See Tex. R. Crim. Evid. 608(b), 609(c)(2); see Jones v. State, 843
S.W.2d 487, 496 (Tex. Crim. App. 1992); Collins v. State, 780 S.W.2d 176, 196 (Tex. Crim.
App. 1986); Menchaca v. State, 854 S.W.2d 128, 129-31 (Tex. Crim. App. 1993); Moody v.
State, 827 S.W.2d 875, 890-91 (Tex. Crim. App. 1992). The court's ruling was well within its
discretion. Carrillo v. State, 591 S.W.2d 876, 885 (Tex. Crim. App. 1979). Appellant's first
point of error is overruled.

 In his second point of error, appellant asserts that he was denied effective assistance
of counsel because trial counsel failed to investigate the facts of the case. Appellant's specific
complaint is that counsel did not find and interview William Wright, a potential witness. In his
pretrial statement, appellant said, and in his trial testimony testified, that the complainant, after
spending all of her money, performed oral sex on William Wright and Roshaan Trappio, in
exchange for cocaine, at the apartment where they went after leaving the club. In his statement
appellant said he was an eyewitness to these acts, but at trial he testified that he did not witness
the acts. Appellant testified that Wright, his former roommate, told him what happened.

 Trappio was called as a trial witness, but on advice of counsel invoked his
constitutional right and refused to testify. Wright was not present at trial and did not testify. In
the hearing on appellant's motion for new trial, appellant was represented by his appellate
counsel. The motion for new trial was not supported with an affidavit made by Wright. The
record fails to show that Wright was subpoenaed to appear and testify on the motion for new trial. 
Moreover, the record fails to show why Wright was not subpoenaed or why other efforts were
not made to obtain his testimony on the motion for new trial. Appellant's counsel on the motion
and on appeal in an unsworn statement merely stated in the course of argument that: "Mr. Wright
is not available at this time."

 On motion for new trial, appellant testified and offered the testimony of his trial
counsel. Trial counsel testified that after attempting to contact Wright two or three times prior
to trial, he decided he did not want to call Wright as a witness. He reasoned that Wright's part
of the story did not "jibe" with the other evidence and that he felt Wright's testimony could only
harm appellant's case because Wright was a convicted felon who was selling dope.

 To show ineffective assistance of counsel, appellant must show that: (1) that trial
counsel's performance was deficient, in that counsel made such serious errors that he was not
functioning effectively as counsel; and (2) the deficient performance prejudiced the defense to such
a degree that appellant was deprived of a fair trial. Strickland v. Washington, 466 U.S. 668
(1984); Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986); O'Hara v. State, 837
S.W.2d 139 (Tex. App.--Austin 1992, pet. ref'd). Counsel's performance is to be judged by the
"totality of representation" provided. Strickland, 466 U.S. at 690; Butler v. State, 716 S.W.2d
48, 54 (Tex. Crim. App. 1986).

 In deciding an ineffectiveness claim, this Court must judge the reasonableness of
counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's
conduct--not by hindsight. We must then determine, in light of all the circumstances, whether the
acts or omissions are outside the wide range of professionally competent assistance. Strickland,
466 U.S. at 690. Appellant bears a heavy burden to prove his ineffective assistance claim. 
Counsel is strongly presumed to have provided adequate assistance and to have made all
significant decisions in the exercise of reasonable professional judgment. Id. We must not look
at the errors of counsel in a vacuum. As a general rule, isolated instances in the record reflecting
errors of omission or commission do not necessarily render counsel's representation ineffective. 
 McFarland v. State, 845 S.W.2d 824, 843 (Tex. Crim. App. 1992); Ex parte Owens, 860
S.W.2d 727, 729 (Tex. App.--Austin 1993, pet. ref'd).

 The decision whether to call a witness is a matter of trial strategy and as such is
a prerogative of trial counsel. Brown v. State, 866 S.W.2d 675, 678 (Tex. App.--Houston [1st
Dist.] 1993, pet. ref'd); Hill v. State, 666 S.W.2d 663, 668 (Tex. App.--Houston [1st Dist.] 1984),
aff'd, 686 S.W.2d 184 (Tex. Crim. App. 1985). Matters of trial strategy will be reviewed only
if an attorney's actions are without any plausible basis. Brown, 866 S.W.2d at 678.

 We recognize that appellant's emphasis is directed to counsel's failure to investigate
and interview Wright, but it is apparent that trial counsel in the exercise of his professional
judgment decided not to call Wright as a witness even if he believed Wright's testimony were
precisely as appellant claimed it would be. It appears that in trial counsel's judgment Wright's
testimony would not benefit appellant's defense even if it were exactly as appellant claimed it
would be.

 Appellant criticizes trial counsel, arguing that trial counsel relied too much on the
prosecutor and the prosecutor's investigator who interviewed Wright prior to trial. The
investigator claimed that Wright would not testify that the complainant gave him sexual favors for
drugs. However, trial counsel recognized that if Wright's trial testimony were different than that
obtained by the investigator, Wright still could be impeached by his prior inconsistent statement. 
The State could also have argued that appellant's friend and former roommate, a convicted felon
and dope dealer, would lie to help appellant.

 Appellant's reliance on Butler v. State, 716 S.W.2d 48 (Tex. Crim. App. 1986),
is misplaced and unsound. In Butler, the defendant on the hearing of his motion for new trial
produced witnesses whom counsel failed to interview in his investigation of the case. Two
eyewitnesses gave sworn testimony at the hearing that someone other than the defendant
committed the robbery and another witness testified that Butler was someplace else when the
offense was committed. Also, in Butler, trial counsel failed to obtain and introduce in evidence
bank records and telephone call records which would have supported the defense. The appellant's
attempt to force his case into the Butler mold cannot succeed.

 Implicit in the trial court's denial of the motion for new trial is a belief that based
on the evidence before him, Wright's testimony would not have benefitted appellant's defense
even if Wright had testified as appellant claimed he would. Therefore, the trial court did not find
appellant's trial counsel ineffective for failing to pursue the investigation by locating and
interviewing Wright.

 In determining whether appellant had effective assistance of counsel, an appellate
court must make an independent judgment based on mixed questions of law and fact. Ex parte
Owens, 860 S.W.2d 727, 729 (Tex. App.--Austin 1993, pet. ref'd). We have examined the record
in light of the applicable law and conclude independently that the trial court did not err in failing
to grant appellant a new trial on the ground that he was denied effective assistance of counsel. 
Even if trial counsel's judgment were erroneous in this alleged single omission, which under the
record before us we would be reluctant to hold, the totality of trial counsel's representation of
appellant was well within the standard required by Strickland. Appellant's second point of error
is overruled.

 The judgment is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices Powers, Aboussie and Dally*

Affirmed

Filed: May 3, 1995

Do Not Publish








* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1. This offense took place before September 1, 1994, and is governed by the law in effect at
the time the offense was committed. Penal Code, 73d Leg., R.S., ch. 900, § 1.18, 1993 Tex.
Gen. Laws 3586, 3705. Because the code amendments effective September 1, 1994, are not
relevant to this case, the current Code is cited for the sake of convenience.